IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

MICHAEL TILLMAN     PLAINTIFF

v.     CIVIL ACTION # 2:07cv170-KS-MTP

SOUTHERN WOOD PRESERVING
OF HATTIESBURG, INC.     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for summary judgment [Doc. #28] (October 15, 2008) filed by Defendant Southern Wood Preserving of Hattiesburg, Inc. ("Southern Wood"). For reasons to follow, the motion for summary judgment should be **granted in part** and **denied in part**.

## I. BACKGROUND

### A. Procedural History

This is the second suit filed in this Court by Plaintiff Michael Tillman against his former employer, Southern Wood. Tillman first filed suit against Southern Wood on January 20, 2006. In that case, Tillman alleged claims of failure to promote and discriminatory pay. *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 250 F. App'x 622, 624 (5th Cir. 2007) (unpublished). This Court dismissed both claims after Southern Wood filed a motion for summary judgment. *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, No. 2:06cv33, 2007 WL 1101212 (S.D.Miss. Apr. 5, 2007).

Tillman filed the instant suit on August 20, 2007, asserting several claims. [Doc. #1].

Tillman alleges that Southern Wood retaliated against him for filing an Equal Employment Opportunities Commission ("EEOC") complaint and the previous law suit against the company. Tillman further alleges that Southern Wood constructively discharged him and discriminated against him on the basis of race by, *inter alia*, creating a hostile work environment. Tillman brought suit under Title VII of the Civil Rights Act of 1964 and Mississippi state law.

### B. Factual Background

Tillman, a black male, was hired by Southern Wood in 1989 or 1990 but left for a better paying job. Tillman was rehired by the defendant in 1997 as a "pole framer"[1] and general laborer in Southern Wood's mill until he resigned in August 2006.

Tillman's first suit against Southern Wood was based on actions taken by Southern Wood to fill its loader operator positions. At various times during Tillman's employment, there were vacancies in the loader operator positions and Tillman was called upon to fill in as a loader operator. Tillman was still listed as a "laborer" and continued to perform pole framing and laborer work when he was not filling in as a loader operator. Tillman specifically took issue with Southern Wood's decision, on November 29, 2004, to hire Bobby Cooley, a white male, to fill a vacant loader position which Tillman had been filling. Tillman viewed this as a demotion and because Cooley was hired to work for nine dollars per hour – one dollar per hour more than Tillman earned – Tillman also contended that the unequal pay constituted disparate treatment based on his race.

Approximately one year after Cooley was hired, he was terminated by Southern Wood.

---

[1] A "pole framer" is one who prepares utility poles for delivery to various utility companies by drilling holes in the poles, placing identification tags on the poles and sawing a flat spot where called for on the pole for mounting electrical equipment.

2

Southern Wood then ran an advertisement for a loader operator and Curtis Spradley, a white male, applied for the job through the Mississippi Employment Service. After Spradley indicated that he would do the job for seven dollars and fifty cents per hour, Southern Wood offered the loader operator job to Tillman at that rate of pay. Tillman refused the job and Southern Wood hired Spradley. When Spradley resigned, Southern Wood rehired John Alexander, a black male, as a loader operator at $9.00 per hour. Alexander had been a loader operator when Tillman was originally hired.

After considering those facts, this Court dismissed Tillman's previous suit against Southern Wood after Southern Wood filed a motion for summary judgment. The Court found that Tillman had "produced absolutely no credible proof that the defendant took any detrimental employment action toward the plaintiff because of his race." *Tillman*, 2007 WL 1101212, at *6.

In the instant case, Tillman alleges that after Southern Wood became aware of his initial EEOC complaint and, later, his first suit against the company in this Court, Southern Wood took various actions that Tillman contends were racially discriminatory and retaliatory. For example, Tillman alleges that approximately one month after he filed the EEOC complaint, he was summoned back to work after he had left for the day, interrogated about why he had filed the EEOC complaint, and then terminated. Tillman alleges that he was allowed to return to work only after his attorney contacted Southern Wood about the incident. See Pl.'s Aff. at ¶ 15 [Doc. #31-2] (October 29, 2008) . Tillman further alleges that several months later, in the summer of 2005, Southern Wood gave a pay raise to each of its employees who had worked for Southern Wood for at least a year, with Tillman being the only such employee not to receive a raise. *Id.* at ¶ 10. Additionally, Tillman alleges that on two occasions he was reprimanded without cause. *Id.*

3

at ¶¶ 15-16.  Tillman alleges that on the second occasion, Southern Wood Plant Supervisor Joseph Hartfield shouted at him in front of other employees and asked him, "why don't you just quit?" *Id.* at ¶ 16.  Additionally, Tillman alleges that from March 2005 – around the time he filed the initial EEOC complaint – through June 2006 Southern Wood denied him the opportunity to work overtime on Saturdays even though it allowed other employees to do so.  *Id.* at ¶ 12.

Tillman alleges that he resigned on August 4, 2006, after being forced to do extra work outside in the sun as a pole framer despite having a medical condition.  *See* Def.'s Exh. B at 28 [Doc. #29-3] (October 15, 2008).  Tillman had taken a six-week leave of absence in April and May 2006 after suffering a heart attack.  When Tillman returned to work, he presented a note from his cardiologist indicating that he was released to return to work.  *Id.* at 45-47.  The cardiologist's note did not indicate any restrictions of Tillman's ability to return to work.  *Id.* Tillman worked continuously for Southern Wood upon returning from his medical leave on May 24, 2006, until he resigned on August 4, 2006.

On July 28, 2006, Hartfield announced that several framing ramps would be extended, beginning on July 31.  *Id.* at 28-34.  This was to be accomplished by laying more poles on the ground to support additional product poles on which the framers would work.  *Id.* at 31.  Tillman left work early one day on or shortly after July 31, 2006.  *Id.* at 34-35.  Before leaving, Tillman told Hartfield that he could no longer work in the sun.  *Id.* at 35.  Tillman did not tell Hartfield that he was never coming back.  *Id.* at 39.  Moreover, Tillman concedes that even before the extension of the framing ramp, he had previously done a portion of his work outside in the sun. *Id.* at 41-42.

In the instant motion, Southern Wood contends that (1) several of Tillman's claims are

4

time-barred; (2) several of Tillman's claims are barred by res judicata; (3) there is no genuine issue of material fact concerning Tillman's constructive discharge claim; and (4) Tillman has produced insufficient evidence to establish a prima facie case of race discrimination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This is true "since a complete failure of proof concerning an essential element of the nonmoviing party's case necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Anderson*, 477 U.S. at 247). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must

establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and cannot satisfy its burden with "conclusory allegations [or] unsubstantiated assertions." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### III. APPLICATION AND ANALYSIS

#### A. Exhaustion

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). To exhaust their administrative remedies, claimants must file their civil action within ninety days after receipt of a statutory right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The Fifth Circuit strictly construes this requirement and courts within the Fifth Circuit have repeatedly dismissed cases where the plaintiff did not comply with this requirement.

6

*Taylor*, 296 F.3d at 379. "[T]he ninety-day period of limitations begins to run on the date that the EEOC right-to-sue letter is received." *Id.*

In this case, Tillman has submitted evidence that he received the EEOC right to sue letter on May 21, 2007.[2] Pl.'s Exh. 7 [Doc. #31-5] (October 29, 2008). By this Court's count, the ninetieth day after May 21, 2007, was Sunday, August 19, 2007. *See generally Garnica v. Zale Lipshy Univ. Hosp.*, No. 3:03-CV-0637-P, 2004 U.S. Dist. LEXIS 29028, at *8 (N.D.Tex. Feb. 10, 2004) ("Pursuant to Federal Rule of Civil Procedure 6(a), the Court does not include the day of the event . . . when computing time periods."). Tillman filed suit on Monday, August 20, 2007. [Doc. #1]. Because Tillman filed suit on the first business day after August 19, 2007, the suit is timely and the exhaustion requirement is satisfied. *See Hughes v. Hollywood Casino Corp.*, No. 2:07-CV-026-SAA, 2007 U.S. Dist. LEXIS 83778, at *9-10 (N.D.Miss. Nov. 1, 2007) ("Ninety days later . . . ended on Saturday, February 17, 2007. . . . The plaintiff filed this case on February 20, 2007. This court was not open on Saturday, February 17th; Sunday, February 18th; or Monday, February 19, 2007. Therefore, the next business on which the plaintiff could have filed her complaint was Tuesday, February 20, 2007. By slimmest of margins, the plaintiff has filed her case timely."). As a result, to the extent Southern Wood seeks dismissal for failure to exhaust, the motion should be denied.

---

[2] Southern Wood argues that this Court should instead presume that Tillman received the letter on May 19, 2007, three days after it was mailed. Def.'s Br. at 10 [Doc. #29] (October 15, 2008). This argument borders on the frivolous, as presumption of receipt is only "appropriate when the actual date of receipt [i]s unknown." *Morgan v. Potter*, 489 F.3d 195, 196 (5th Cir. 2007) (citing *Taylor*, 296 F.3d at 379-80 (""Title VII provides in no uncertain terms that the ninety-day period of limitations begins to run on the date that the EEOC right-to-sue letter is received.")); *see also id.* at 196-97 (explaining that either a three-day or a five-day presumption would be reasonable).

### B. Statute of Limitations

"A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct." *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)). "This time limit operates as a statute of limitations." *Id.* Only the incidents that took place within the timely filing period are actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' " *Id.* at 114.

In this case, Tillman filed the pertinent EEOC complaint on March 16, 2006. [Doc. #3] (December 1, 2007). Accordingly, Southern Wood argues that all of Tillman's claims based on events that occurred before September 17, 2005, are time-barred and must be dismissed. Def.'s Br. at 11 [Doc. #29] (October 15, 2008). Tillman does not dispute that one or more of his claims are based on events that occurred outside the statutory window. *See* Pl.'s Br. at 12 [Doc. #31] (October 29, 2008). Such events include Southern Wood's alleged termination of Tillman in April 2005 and the alleged pay raise for Southern Wood employees in the summer of 2005.

Tillman argues that his claims based on these events should not be dismissed because there was "a continuous and escalating retaliatory action on the part of Southern Wood" that

8

included those events. *Id.* Although a plaintiff may be "relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period" under the continuing violations doctrine, *see Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004), this doctrine does not apply to claims of retaliation. "[R]etaliation is, by definition, a discrete act, not a pattern of behavior." *Hamic v. Harris County W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006) (unpublished) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705-07 (5th Cir. 1997)). Accordingly, "a plaintiff can only recover for retaliation to the extent that it occurred within the limitations period, that is, the continuing violations doctrine does not apply to retaliation." *Id.* As a result, Southern Wood's motion should be granted[3] to the extent it seeks dismissal of any claim(s) by Tillman based on an event that occurred before September 17, 2005.[4]

---

[3] By virtue of this ruling, the Court need not consider Southern Wood's contention that Tillman's claims based on these events are barred by res judicata. *See* Def.'s Br. at 12.

[4] Tillman does not argue that the aforementioned events can properly be considered under the continuing violations doctrine for his hostile work environment claim, even though the Supreme Court of the United States has held that "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period . . . [p]rovided that an act contributing to the claim occurs within the filing period." *Morgan*, 536 U.S. at 117. Tillman's failure to argue this point – and to provide supporting evidence – forces the Court to decide this issue in Southern Wood's favor. *See Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002) (the continuing violation theory "does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation" (quoting *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 351 (5th Cir. 2001)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Suffice it to say, having thoroughly reviewed the record evidence, this Court does not find it to be clear that the aforementioned events are part of an organized (non-retaliatory) scheme leading to and including the events occurring within the statutory time period. *See Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

9

### C. Tillman's Claims for Damages Based on His Heart Condition

Tillman suffered a heart attack in April 2006 and subsequently took a leave of absence from his work at Southern Wood from April 7, 2006, through May 24, 2006. Def.'s Exh. B at 43 [Doc. #29-3]. When testifying at his deposition in his first suit against Southern Wood, Tillman indicated that he attributed the heart attack to the actions that served as the basis for his first suit against Southern Wood. Def.'s Exh. E at 58, 60 [Doc. #29-6] (October 15, 2008). In the instant motion, Southern Wood argues that Tillman is barred by res judicata from recovering damages for the heart attack because he previously contended that it was caused by the actions taken by Southern Wood at issue in the first case and because the Court's judgment in the first case was adverse to Tillman. Def.'s Br. at 13. In support of this argument, Southern Wood cites no legal authority. *See id.*

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Id.*

In the first case between these parties, the Court granted summary judgment to Southern Wood and dismissed the case. *See Tillman*, 2007 WL 1101212. The Court's basis for doing so, was its conclusion that Tillman had not established a genuine issue of material fact concerning Southern Wood's liability to him. *See id.* The issue of whether Southern Wood's conduct caused Tillman's heart condition was not adjudicated. Although, Tillman's attempt to attribute his heart condition to multiple causes may cause a fact finder to doubt his veracity, the Court has found no legal support for Southern Wood's argument that Tillman should be precluded from

alleging this causal relationship. As a result, Southern Wood's motion for summary judgment on this basis should be denied.

### D. Tillman's Constructive Discharge Claims

Southern Wood argues that Tillman cannot establish a legally viable claim of constructive discharge retaliation. Def.'s Br. at 14-17. Under the constructive discharge doctrine, an employee's reasonable decision to resign is assimilated to a formal discharge for remedial purposes. *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). "The Fifth Circuit has set the bar very high for plaintiffs seeking to establish a constructive discharge." *Jackson v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 54 F. App'x 404, 2002 WL 31687699, at *4 (5th Cir. 2002) (unpublished) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)). The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992). Courts, in reviewing constructive discharge claims, ask whether "working conditions [became] so intolerable that a reasonable employee would feel compelled to resign." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). This objective test has been referred to as the reasonable employee test. *See, e.g.*, *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir.2004).

Tillman lists several actions allegedly taken by Southern Wood that he contends support his constructive discharge claim. The Court will consider each allegation in turn.

First Tillman reiterates, at length, the facts underlying his first suit against Southern Wood. As indicated above, this Court previously evaluated Tillman's allegations pertaining to the loader operator position and held that Tillman "produced absolutely no credible proof that the

11

defendant took any detrimental employment action toward the plaintiff because of his race." *Tillman,* 2007 WL 1101212, at *6. Tillman has provided no justification for asking this Court to revisit its conclusion or to reevaluate Tillman's allegations that this Court has deemed unsubstantiated. Accordingly, the Court finds that the allegations provide no support for Tillman's constructive discharge claim.

Second, Tillman alleges that Southern Wood's management harassed him and made unsubstantiated allegations against him beginning in April 2005. Tillman alleges that on April 12, 2005, he was brought back to work after he had left for the day and that he was then terminated. As stated above, this event cannot be considered by the Court as evidence of retaliation since it occurred beyond the statute of limitations. *See ante* at 8-9.

Third, Tillman alleges that in the summer of 2005, Southern Wood gave a pay raise to each of its employees who had worked for Southern Wood for at least a year, with Tillman being the only such employee not to receive a raise. Pl.'s Aff. at ¶ 10 [Doc. #31-2]. As this alleged event transpired outside the statute of limitations, it cannot serve as evidence of the retaliatory constructive discharge claim.[5] *See ante* at 8-9.

---

[5] In addition, the Court notes that Tillman has not introduced competent summary judgment evidence of the alleged pay raise. Tillman provides only two sources to substantiate this claim: his sworn affidavit, Pl.'s Aff. at ¶ 10, and a May 16, 2007, EEOC determination letter. Pl.'s Exh. 7 [Doc. #31-5] (October 29, 2008).

Federal Rule of Civil Procedure 56(e)(1) requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007) (unpublished); *Thomas v. Atmos Energy Corp.*, 223 F. App'x. 369, 374 (5th Cir. 2007) (unpublished). Tillman confessed during his deposition that his only basis for believing that there was a pay raise implemented was that other employees had indicated that a pay raise had been implemented. Def.'s Exh. B at 55 [Doc. #29-3]. This Court cannot consider inadmissible hearsay evidence or an allegation in an affidavit

Fourth, Tillman alleges that in February 2006, Hartfield falsely accused him of cursing a coworker, Curtis Spradley, and that on a separate occasion in the same month, Hartfield shouted at him and asked him, "why don't you just quit?" *See* Pl.'s Aff. at ¶¶ 15-16. Tillman has made no other specific allegations that Hartfield harassed or baselessly accused him of wrongdoing.

Fifth, Tillman alleges that Southern Wood denied him the opportunity of working overtime on Saturdays between March 2005 and June 2006 while allowing other employees to do so. *Id.* at ¶ 12. Southern Wood's records, kept in the ordinary course of business, indicate that Tillman worked five Saturdays in June and July 2006. *See* Def.'s Ex. F [Doc. #29-7] (October 15, 2008).

Finally, Tillman alleges that he ultimately resigned on August 4, 2006, after being forced to do extra work outside in the sun despite having a medical condition. *See* Def.'s Exh. B at 28 [Doc. #29-3].

In summary, Tillman has presented competent evidence to support the following allegations: (1) In February 2006, Hartfield falsely accused him of cursing a coworker; (2) In February 2006, Hartfield shouted at Tillman in front of other employees and asked him, "why don't you just quit?"; (3) Southern Wood did not permit Tillman to work overtime on Saturdays between March 2005 and June 2006; and (4) Tillman's job requirements changed in July 2006 – after he had taken a six-week leave of absence following a heart attack – requiring that he work

---

or deposition based on such evidence. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). As a result, Tillman's affidavit does not provide competent summary judgment evidence of a pay raise. The EEOC determination that Tillman cites, states only that there is "reasonable cause to believe . . . [Tillman] was denied a promotion." Pl.'s Exh. 7 [Doc. #31-5] (October 29, 2008). The EEOC letter does not indicate what evidence, if any, supports its conclusion and therefore similarly provides no support for Tillman's allegation.
13

additional hours as a pole framer outside in the sun. Facing these facts, the Court must decide whether the work conditions were so intolerable that a reasonable employee would have felt compelled to resign.

To reach this decision, the Court will consider, *inter alia*, whether the plaintiff suffered "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) re-assignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the plaintiff worse off whether the offer was accepted or not." *Barrow v. New Orleans S.S. Ass'n*, 110 F.3d 292, 297 (5th Cir. 1994). "[U]nremediated harassment may . . . cause a constructive discharge, but only if it is 'severe or pervasive' and 'create[s] an environment that a reasonable person would find hostile or abusive.'" *McCoy*, 492 F.3d at 558. "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* "An employee who resigns without affording the employer a reasonable opportunity to address her concerns has not been constructively discharged." *Williams v. Barnhill's Buffet Inc.*, No. 08-60136, 2008 WL 3911068, at *3 (5th Cir. Aug. 26, 2008) (unpublished). Accordingly, "[p]art of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987) (quoting *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987)).

Having considered Tillman's allegations along with the pertinent legal authority, this

Court holds that, even assuming Tillman's allegations are true, he is unable to establish a claim of constructive discharge. Of the seven factors listed above, only one is arguably present in this case. Tillman does not have competent evidence that he (1) was demoted; (2) had his salary reduced; (3) had his responsibilities reduced;[6] (4) was reassigned to menial or degrading work; (5) was reassigned to work under a younger supervisor; or (7) was offered early retirement. While Tillman has presented evidence that he was harassed because he was reprimanded without cause, the alleged harassment took place on only two occasions, in February 2006, and Tillman concedes that he had no additional conflicts with Hartfield from March 11, 2006, through August 2006 when he resigned. Def.'s Exh. B at 55 (Doc. #29-3). This Court does not believe this harassment is even remotely near what is required to establish a constructive discharge claim. Additionally, even if Southern Wood did not allow Tillman to work overtime between March 2005 and June 2006, this practice ended in June 2006. Tillman worked five Saturdays in June and July 2006. Consequently, the alleged harassment does not constitute a strong (or even moderately strong) basis for which a reasonable employee would resign.

The only other substantiated allegation by Tillman is that he was required to work outside in the sun several months after having a heart attack and taking a leave of absence. However, in light of the fact that his previous work had required him to work in the sun at times and that Tillman's doctor's note expressed no medical limitations when he returned to work, the Court finds that this change did not suffice to give rise to constructive discharge. Notably, Tillman did not afford Southern Wood a reasonable opportunity to address his concerns; he did not even tell

---

[6] Tillman does not contend that by not permitting him to work overtime, Southern Wood reduced his salary or responsibilities.

Hartfield that he was never returning when he left Southern Wood. This minimal evidence of a hostile or abusive work environment combined with Tillman's unreasonable reaction thereto, requires this Court's conclusion that there is no genuine issue of material fact and that Southern Wood is entitled to judgment as a matter of law regarding Tillman's constructive discharge claim.

### E. Tillman's Racial Discrimination Claims

Southern Wood argues that Tillman cannot establish a legally viable claim of race discrimination. Southern Wood argues that Tillman has not demonstrated that white employees were treated differently from him under similar circumstances. *See* Def.'s Br. at 17 (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). Based on the sole case cited by Southern Wood, *Mayberry v. Vought Aifcraft Co.*, this Court interprets Southern Wood's argument to be that Tillman has failed to establish a prima facie case of discrimination for his work-rule violation claim. 55 F.3d at 1090-91. Southern Wood fails to recognize, however, that *Mayberry* expressly allows for two different methods for establishing a prima facie case: "a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.' " *Id.* at 1090 (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).

Here, Tillman has averred that the allegations made against him were "unsubstantiated" and has supported this averment with a sworn affidavit. Pl.'s Aff. at ¶¶ 7, 14-15 (describing the "unsubstantiated," and "false[]" accusations made against him). Accordingly, Southern Wood's argument – that Tillman's claim fails due to lack of evidence regarding dissimilar treatment of white employees – is without merit. The Court finds that a genuine issue of material fact exists

16

concerning whether Tillman can establish a prima facie case of racial discrimination.[7] As a result, Southern Wood's motion to dismiss Tillman's claims of racial discrimination should be denied.

IV. CONCLUSION

For the reasons set forth above, the Court holds that Tillman's constructive discharge claim and his claims based on events occurring before September 17, 2005, should be dismissed. In all other respects, Southern Wood's motion for summary judgment should be denied.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Defendant's motion for summary judgment [Doc. #28] is **granted in part** and **denied in part**.

SO ORDERED AND ADJUDGED on this, the 11th day of December, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[7] Since Southern Wood has not argued that it has provided a nondiscriminatory reason for its actions, Tillman is not required to offer proof of pretext at this juncture. *See John v. Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985) ("the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment].").